UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                                      Case No. 8:11-bk-00810-MGW
                                                                                          Chapter 7

Andrew Bush Johnson,

        Debtor.
_____/

**ORDER AND MEMORANDUM OPINION DENYING
UNITED STATES TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**

The Debtor has included operating expense allowances for three cars in his means test calculations. The U.S. Trustee has objected. While the IRS Local Standards only reference allowances for up to two cars, the IRS guidelines contained in the Internal Revenue Manual would permit an allowance for a third car if the operating expense was necessary to provide for the Debtor's (or his family's) welfare or production of income. Accordingly, the Debtor is not precluded from claiming an operating expense allowance for the third car.

**Procedural and Factual Background**

The U.S. Trustee has moved for summary judgment on his motion to dismiss the Debtor's chapter 7 case pursuant to Bankruptcy Code section 707(b)(2).[1] The motion is based on the presumption of abuse that arises under section 707(b)(2) when the means test calculations conducted by the Debtor are recalculated to exclude the operating expense claimed by the Debtor with respect to one of the three vehicles that he owns.[2]

The Debtor owns three vehicles: a 2004 GMC Yukon, a 2007 Ford Mustang, and a 1998 Honda Accord. The Yukon and Mustang are driven by the Debtor and his non-filing wife and are

---

[1] Unless otherwise stated, statutory references are to the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

[2] Doc. No. 24 at ¶¶ 1, 15 & 16; Doc. No. 19 at ¶¶ 6 & 11-15.

subject to liens securing purchase-money obligations. The Honda is driven by the Debtor's oldest minor daughter and is owned free and clear. The Debtor and his wife both work full-time while raising three teenage daughters. They need the Yukon and the Mustang for transportation to and from work. The oldest daughter is enrolled in a dual high school/college program that requires transportation between schools. This daughter also uses the Honda to provide daily transportation for her two younger sisters to and from school, medical appointments, and other activities.[3]

Because the Debtor's family income is above the median family income for their household size, the Debtor is required to fully complete Official Form B22A. The Debtor's Form B22A lists ownership expenses in the amount of $496 for the Yukon and $496 for the Mustang. The Debtor also lists expense allowances for the operation of all three vehicles in the amount of $239 for each automobile. In addition, because the Debtor did not take an ownership expense for the Honda, the Debtor also claims an additional $200 for operation of the Mustang because it is more than six years old and has been driven over 75,000 miles.[4]

The inclusion of the operating expense allowance for the Honda results in the Debtor having no monthly disposable income available for the payment of creditors. Thus, under the Debtor's calculation, no presumption of abuse arises under section 707(b)(2). But under the U.S. Trustee's recalculated means test (which excludes the operating expense for the third vehicle),

---

[3] On summary judgment, all evidence and factual inferences must be viewed in the light most favorable to the party opposing the motion (in this case, the Debtor). *Johnson v. Bd. of Regents of the Univ. of Ga.*, 263 F.3d 1234, 1242 (11th Cir. 2001). Accordingly, the Court accepts for summary judgment purposes only the allegations in the Debtor's opposing affidavit that the use of the Debtor's third car is necessary for the Debtor's household needs. (Doc. 27 at ¶ 1). Because the Court denies the U.S. Trustee's summary judgment motion, the Debtor will have the burden of establishing at a final evidentiary hearing in this matter that the operating expense for the third car is necessary to provide for the Debtor's (or his family's) welfare or production of income.

[4] As discussed below, the U.S. Trustee does not take issue with the claim of an additional $200 for operation expenses for the older Mustang. The U.S. Trustee's objection solely relates to the Mustang's being a third car.

the Debtor's monthly disposable income is well in excess of the $10,950 limit established in section 707(b)(2)(A)(i)(II), and the presumption of abuse arises.

The issue before the Court with respect to the U.S. Trustee's motion for summary judgment is whether the Debtor is entitled to include the IRS expense allowances for the operation of the Debtor's third vehicle, the Honda.

## Conclusions of Law

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

As noted, the issue before the Court is whether an above-median income chapter 7 debtor is limited to the expenses for two cars for purposes of the means test as applied under Form B22A. In resolving this issue, this opinion will first review generally the operation of the "means test" contained in section 707(b)(2). The opinion will then discuss the impact of the recent Supreme Court decisions in *Ransom*[5] and *Lanning*[6] on how a bankruptcy court should apply the means test formula and, in particular, the deference to be given to the manner in which the IRS applies its standards with respect to transportation expenses. The opinion will then consider whether the IRS would allow an expense for a third vehicle given appropriate circumstances. Based on this analysis, the opinion will conclude that the text, context, and purpose of section 707(b) do not preclude the Debtor from including the IRS expense amounts for operation of his third vehicle.

---

[5] *Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716, 178 L. Ed. 2d 603 (2011).

[6] *Hamilton v. Lanning*, 130 S. Ct. 2464, 177 L. Ed. 2d 23 (2010).

A. The Means Test.

The cornerstone of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") is the "means test" contained in section 707(b)(2).[7] To analyze its application, we start with section 707(b)(1). Section 707(b)(1) provides that a court may dismiss a case filed by an individual debtor whose debts are primarily consumer debts if it finds that the granting of relief would be an abuse of the provisions of chapter 7.[8]

Section 707(b)(2)(A)(i) then provides that in considering whether the granting of a discharge to an over-median income debtor would be an abuse of chapter 7, "the court shall presume abuse exists" if the Debtor's disposable income is enough to either pay at least $10,950 over 60 months ($182.50 per month) or 25% of the debtor's general unsecured creditors over that time period. Section 707(b)(2)(A) then goes on to specify the specific allowable deductions that the Debtor may take for various categories of expenses.[9]

A key feature of the means test is that the allowable expense deductions are derived in substantial part from the amounts specified under the National Standards and Local Standards issued by the Internal Revenue Service.[10] These standards are used by the IRS in calculating the repayment of delinquent taxes and were established by the IRS to provide consistency in certain expense allowances for items such as groceries and household expenses, medical expenses, and housing and transportation expenses.[11]

---

[7] *Ransom,* 131 S. Ct. at 721 (referring to the means test as the "heart" of BAPCPA's consumer bankruptcy reforms).

[8] 11 U.S.C. § 707(b)(1).

[9] 11 U.S.C. § 707(b)(2)(A)(i). The court cannot dismiss a case under section 707(b)(2) if the debtor is a below-median income debtor. 11 U.S.C. § 707(b)(7).

[10] 11 U.S.C. § 707(b)(2)(A)(ii)(I).

[11] Internal Revenue Manual ("IRM"), § 5.15.1.1.5.

In this case, the Debtor's means test includes the IRS allowable expense deduction for the third car used by the Debtor's daughter. As a result, the Debtor's disposable income falls short of the amount that would trigger the presumption of abuse under the means test. If this expense allowance is not permitted, then the Debtor's net monthly income will exceed the permitted amount, the filing will be presumed abusive, and the U.S. Trustee's motion for summary judgment must be granted.

In his motion for summary judgment, the U.S. Trustee argues that the IRS table labeled "IRS Local Transportation Expense Standards" ("IRS Table") has "the force of law,"[12] and because the IRS Table only contains the options of "One Car" or "Two Cars," the Debtor is limited to deducting expenses for two cars even if three cars are reasonably necessary. The Debtor relies on other language in the IRS's Collection Financial Standards to support the deduction of the expenses for the third car. The U.S. Trustee dismisses the Debtor's reliance on the Collection Financial Standards on the basis that the standards are at most "instructive."[13]

While bankruptcy courts have struggled with the proper interpretation and application of the means test since the enactment of BAPCPA, two recent Supreme Court cases provide direction to this Court in dealing with the issue presented in this case: *Hamilton v. Lanning*[14] and *Ransom v. FIA Card Services, N.A.*[15]

B.   *Lanning* and *Ransom*.

In *Lanning*, the Supreme Court addressed the issue of whether a "mechanical approach," as opposed to a "forward-looking approach," should be used in calculating a debtor's "projected

---

[12] Doc. No. 31 at 3.

[13] *Id.*

[14] 130 S. Ct. at 2475-76.

[15] 131 S. Ct. at 721-25.

disposable income" for purposes of confirmation of a chapter 13 plan.[16] This issue arose from the reference to "current monthly income" as the starting point in calculating "projected disposable income." The term "current monthly income" is defined in the Bankruptcy Code as the average of the debtor's monthly income during the six months preceding the filing of the case.[17] Lower courts had reached different results on this issue.

One line of cases applied this definition mechanically even where, due to a change of circumstances, the debtor's income at the time plan payments were to start varied materially from the debtor's actual income.[18] The other line of cases agreed that the mechanical approach was a starting point, but found that the bankruptcy court had discretion to make an appropriate adjustment based on material changes in a debtor's financial circumstances that had occurred after the petition date.[19]

In rejecting the mechanical approach, the *Lanning* Court held: "[W]here, as in the present case, the debtor's disposable income during the plan period is substantially lower, the mechanical approach would deny the protection of Chapter 13 to debtors who meet the chapter's main eligibility requirements."[20] The Supreme Court concluded that if the Bankruptcy Code required the use of the mechanical approach in all cases irrespective of the debtor's particular

---

[16] *Lanning*, 130 S. Ct. at 2469 (construing 11 U.S.C. § 1325(b)(1)).

[17] 11 U.S.C. § 101(10A).

[18] *See, e.g., Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 872-75 (9th Cir. 2008); *In re Austin*, 372 B.R. 668, 675-76 (Bankr. D. Vt. 2007); *In re Kolb*, 366 B.R. 802, 815-16 (Bankr. S.D. Ohio 2007); *In re Hanks*, 362 B.R. 494, 497-502 (Bankr. D. Utah 2007); *In re Miller*, 361 B.R. 224, 229-34 (Bankr. N.D. Ala. 2007).

[19] *In re Turner*, 574 F.3d 349, 355-56 (7th Cir. 2009); *Nowlin v. Peake (In re Nowlin)*, 576 F.3d 258, 265-66 (5th Cir. 2009); *Hamilton v. Lanning (In re Lanning)*, 545 F.3d 1269, 1278-1282 (10th Cir. 2008); *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652, 658-661 (8th Cir. 2008).

[20] *Lanning*, 130 S. Ct. at 2476.

6

circumstances, "this strategy would improperly undermine what the Code demands."[21] Importantly, the Supreme Court in *Lanning* concludes that "the Code does not insist upon rigid adherence to the mechanical approach in all cases."[22]

In *Ransom*, the issue was whether a debtor who owned his car outright but who did not make loan or lease payments was nevertheless entitled to claim the IRS allowance for car ownership costs.[23] In deciding this issue, the Supreme Court's analysis starts with the language of section 707(b)(2)(A)(ii)(I), which states that the debtor's monthly expenses "shall be the debtor's applicable monthly expense amounts specified under the . . . Local Standards . . . issued by the Internal Revenue Service." The Court notes that the key word in this provision is "applicable."[24] Because the Code does not define "applicable," the Court then applies its ordinary meaning and concludes that an expense amount is "applicable" within the plain meaning of the statute when it is "appropriate, relevant, suitable, or fit."[25]

As in *Lanning*, the Supreme Court rejects a mechanical "one size fits all" approach and concludes that the appropriateness of allowing an expense amount must be determined in "correspondence to an individual debtor's financial circumstances":

> A debtor may claim a deduction from a National or Local Standard table (like "[Car] Ownership Costs") if but only if that deduction is appropriate for him. And a deduction is so appropriate only if the debtor has costs corresponding to the category covered by the table—that is, only if the debtor will incur that kind of expense during the life of the plan. The statute underscores the necessity of making such an individualized determination by referring to "*the debtor's* applicable monthly expense amounts"—in other words, the expense amounts

---

[21] *Id.* at 2476-77.

[22] *Id.* at 2477.

[23] *Ransom*, 131 S. Ct. at 721.

[24] *Id.* at 724.

[25] *Id.*

7

> applicable (appropriate, etc.) to each particular debtor. Identifying these amounts requires looking at the financial situation of the debtor and asking whether a . . . Local Standard table is relevant to him.[26]

The Supreme Court also draws from BAPCPA's purpose. As noted above, Congress designed the means test to ensure that debtors repay creditors the maximum they can afford.[27] "This purpose is best achieved by interpreting the means test, consistent with the statutory text, to reflect a debtor's ability to afford repayment."[28] As the Court observes, "[t]he heart of [BAPCPA's] consumer bankruptcy reforms" is intended "to help ensure that debtors who *can* pay creditors *do* pay them."[29]

In *Ransom*, the debtor owned a car and, therefore, took a car ownership expense listed in the IRS Ownership Cost table. The only guidance contained in the table is a reference to "Ownership Cost," a reference that the geographic location of the debtor for this cost is "National,"[30] and a reference that the Ownership Costs are for "One Car" or "Two Cars." The debtor's approach, based solely on the debtor's ownership and on the statutory reference in section 707(B) to "amounts specified under . . . Local Standards" was logical and an approach supported by several cases.[31] However, the Supreme Court disagreed with this approach, concluding that the "text, context, and purpose of the statutory provision" precluded that result.[32]

---

[26] *Id.* (alteration and emphasis in original) (citation omitted).

[27] *Id.* at 725 (citing H.R. Rep. No. 109-31, pt. 1, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89).

[28] *Id.* (citing *Hamilton v. Lanning*, 130 S. Ct. 2464, 2475-76, 177 L. Ed. 2d 23 (2010)).

[29] *Id.* at 721 (quoting H.R. Rep. No. 109-31, pt. 1, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89) (alteration and emphasis in original).

[30] By contrast, the Operating Cost listed in the IRS Local Standards vary across the 22 listed geographic regional areas. *See* IRS Local Transportation Expense Standards-South Census Region, *available at* http://www.justice.gov/ ust/eo/bapcpa/20101101/bci_data/ IRS_Trans_Exp_Stds_SO.htm

[31] *See, e.g., eCast Settlement Corp. v. Washburn (In re Washburn)*, 579 F.3d 934 (8th Cir. 2009).

[32] *Ransom,* 131 S. Ct. at 721.

In reaching this conclusion, the Supreme Court went beyond the words contained in the table and focused on the text of the statute (*i.e.*, the meaning of "applicable"), the purpose of the statute (*i.e.*, that debtors who can pay, do pay), and the context, as discussed below.

With respect to context, *Ransom* turns to the role that the IRS Collection Financial Standards play in the process of determining how the Local Standards are to be applied. In this respect, the *Ransom* Court states: "The IRS also prepares supplemental guidelines known as the Collection Financial Standards, which describe how to use the tables and what the amounts listed in them mean."[33] With respect to the issue before the Court in *Ransom*—whether a debtor without a car payment can take the ownership expense deduction—the *Ransom* Court notes that the "Collection Financial Standards further instruct that, in the tax-collection context, '[i]f a taxpayer has no car payment, . . . only the operating costs portion of the transportation standard is used to come up with the allowable transportation expense.'"[34]

Thus, the specific and determinative interpretation of how the IRS would use the Ownership Cost table is only explicitly found in the Collection Financial Standards. As the Supreme Court later concludes,

> The Collection Financial Standards—the IRS's explanatory guidelines to the National and Local Standards—explicitly recognize this distinction between ownership and operating costs, making clear that individuals who have a car but make no loan or lease payments may claim only the operating allowance. Although the statute does not incorporate the IRS's guidelines, courts may consult this material in interpreting the National and Local Standards . . . . The guidelines of course cannot control if they are at odds with the statutory language. But here, the Collection Financial Standards' treatment of the car-ownership deduction reinforces our conclusion that, under the statute, a debtor seeking to claim this deduction must make some loan or lease payments.[35]

---

[33] *Id.* at 722.

[34] *Id.* (quoting IRM, Financial Analysis Handbook, § 5.15.1.7 at ¶ 4) (alteration in original).

[35] *Id.* at 726 (citation omitted).

9

Importantly, the *Ransom* Court's interpretation of the word "applicable" does not render meaningless Congress's use, in the same sentence, of the word "actual" when referring to the categories specified as Other Necessary Expenses. That is, in the context of Local Standards, the debtor will only get the ownership deduction if the debtor actually has finance or lease payments. However, the amount of those payments does not control the amount of the deduction. That amount is set forth in the IRS Table. This is to be contrasted to the "actual" expenses that are allowed with respect to items that fall within the category of Other Necessary Expenses.[36] With respect to those kinds of expenses, the actual amount of the expenses controls rather than a predetermined amount.

The common thread that can be derived from the Supreme Court's analysis in *Lanning* and *Ransom* is that the means test must be applied in light of the debtor's actual circumstances. It should be applied to give effect to its purpose—that is, that debtors who can afford to pay their creditors should pay their creditors. And because the means test is derived from the procedures followed by the IRS in dealing with delinquent taxpayers, "courts may consult this material in interpreting the National and Local Standards."[37] Accordingly, the Court will next consult those materials to determine what expenses the IRS would find "appropriate, relevant, suitable, or fit" to a taxpayer in similar circumstances to the Debtor.

    C.    What Would the IRS Do?

Because this analysis is conducted in the context of a motion for summary judgment filed by the U.S. Trustee, some further refinement of the issue before the Court is required. That is, the issue is not whether the IRS would allow the expense deduction for the third car in this case.

---

[36] *Id.* at 727.

[37] *Id.* at 726.

Rather, the issue is whether or not the IRS Collection Financial Standards provide sufficient flexibility such that a third car expense might be allowed under any set of facts. If so, the U.S. Trustee's motion for summary judgment must be denied.

In the motion, the U.S. Trustee appropriately refers to the IRS Table in effect when the petition was filed.[38] The IRS Table sets forth the specific Local Standard amounts of the permitted operating costs for the Southern Region. In interpreting the application of the IRS Table, the U.S. Trustee then cites to the Collection Financial Standards,[39] which, according to *Ransom*, are the "IRS's explanatory guidelines to the National and Local Standards."[40] Finally, the U.S. Trustee refers generally to the Internal Revenue Manual's Financial Analysis Handbook,[41] also used by the Supreme Court in its analysis in *Ransom*.[42]

In each instance, the U.S. Trustee references language in these IRS resources that support the position that "one can only claim an ownership expense of up to two vehicles."[43] The U.S. Trustee then argues that "[a] reasonable inference is that one can at most claim an operation expense for up to two vehicles."[44] The Court would agree with the logic of the U.S. Trustee's position if the references cited by the U.S. Trustee were the only ones relevant to the Debtor's circumstances.

---

[38] Doc. No. 24 at 4-5, ¶ 9 (citing IRS Local Transportation Expense Standards-South Census Region, *available at* http://www.justice.gov/ust/eo/bapcpa/20101101/bci_data/IRS_Trans_Exp_Stds_SO.htm).

[39] *Id.* at 5-7, ¶ 10 (citing Collection Financial Standards, *available at* http://www.irs.gov/individuals/article/0,,id=96543,00.html and http://www.irs.gov/businesses/small/article/0,,id=104623,00.html).

[40] *Ransom,* 131 S. Ct. at 726.

[41] Doc. No. 24 at 7-8, ¶ 11 (citing IRM, Financial Analysis Handbook, § 5.15.1.9, *available at* http://www.irs.gov/irm/part5/irm_05-015-001.html).

[42] *Ransom,* 131 S. Ct. at 726-27.

[43] Doc. No. 24 at 4-8, ¶¶ 9-11.

[44] *Id.* at 6, ¶ 10.

But a review of the cited IRS resources reflects that there are additional relevant portions that must be considered in making a determination of the allowability under the IRS Local Standards of operation expenses for the Debtor's third car. First, the Collection Financial Standards set forth, under the heading "General," the following principles for determining allowable expenses:

> Collection Financial Standards are used to help determine a taxpayer's ability to pay a delinquent tax liability. Allowable living expenses include those expenses that meet the necessary expense test. The necessary expense test is defined as expenses that are necessary to provide for a taxpayer's (and his or her family's) health and welfare and/or production of income.
>
> * * *
>
> If the IRS determines that the facts and circumstances of a taxpayer's situation indicate that using the standards is inadequate to provide for basic living expenses, we may allow for actual expenses. However, taxpayers must provide documentation that supports a determination that using national and local expense standards leaves them an inadequate means of providing for basic living expenses.[45]

The Collection Financial Standards also set forth under the heading "Local Standards: Transportation," the following: "If the amount claimed for . . . Operating Costs . . . is more than the total allowed by the transportation standards, the taxpayer must provide documentation to substantiate those expenses are necessary living expenses."[46] In a similar vein, the Financial Analysis Handbook referred to by the U.S. Trustee contains the following preliminary note:

> The standard amounts set forth in the national and local guidelines are designed to account for basic living expenses. In some cases, based on the taxpayer's individual facts and circumstances, it may be appropriate to deviate from the standard amount when failure to do so will cause the taxpayer economic hardship . . . . The taxpayer must provide reasonable substantiation of all expenses claimed that exceed the standard amount.

---

[45] Collection Financial Standards, General, *available at* http://www.irs.gov/individuals/article/0,,id=96543,00.html.

[46] Collection Financial Standards, Local Standards: Transportation, *available at* http://www.irs.gov/businesses/small/article/0,,id=104623,00.html.

* * *

> Economic hardship occurs when a taxpayer is unable to pay reasonable basic living expenses. The determination of a reasonable amount for basic living expenses will be made by the Commissioner and will vary according to the unique circumstances of the individual taxpayer. Unique circumstances, however, do not include the maintenance of an affluent or luxurious standard of living.[47]

Later, the Financial Analysis Handbook deals specifically with allowable expenses and states, by way of overview:

> Allowable expenses include those expenses that meet the necessary expense test. *The necessary expense test is defined as expenses that are necessary to provide for a taxpayer's and his or her family's health and welfare and/or production of income.* The expenses must be reasonable.[48]

* * *

> National and local expense standards are guidelines. If it is determined a standard amount is inadequate to provide for a specific taxpayer's basic living expenses, allow a deviation. Require the taxpayer to provide reasonable substantiation and document the case file.[49]

While not cited by the U.S. Trustee, the Court also considers relevant another portion of the Internal Revenue Manual that deals with the financial analysis to be conducted in connection with offers in compromise.[50] This chapter of the Internal Revenue Manual provides instructions for analyzing a taxpayer's financial condition to determine reasonable collection potential. The Internal Revenue Manual instructs that this section should be used in conjunction with the

---

[47] IRM, Financial Analysis Handbook, § 5.15.1.1, at ¶ 6, *available at* http://www.irs.gov/ irm/ part5/ irm_05-015-001.html.

[48] *Id.* at Allowable Expense Overview, § 5.15.1.7, ¶ 1 (emphasis in original).

[49] *Id.* at ¶ 5.

[50] IRM, Financial Analysis, § 5.8.5, *available at* http://www.irs.gov/irm/part5/irm_05-008-005.html.

Financial Analysis Handbook discussed above.[51] With respect to Transportation Expenses, this chapter provides:

> Transportation expenses are considered necessary when they are used by taxpayers and their families to provide for their health and welfare and/or the production of income. Employees investigating [offers in compromise] are expected to exercise appropriate judgment in determining whether claimed transportation expenses meet these standards. Expenses that appear excessive should be questioned and, in appropriate situations, disallowed.[52]

Interestingly, it is only in this section that a provision is made for the allowance of additional operating expenses for older cars, such as the Debtor's Honda: "In situations where the taxpayer has a vehicle that is currently over six years old or has reported mileage of 75,000 miles or more, an additional monthly operating expense of $200 will generally be allowed per vehicle."[53] The U.S. Trustee has been quite reasonable in taking the position that this additional $200 per vehicle expense should be allowed so long as it is not being taken with respect to a third vehicle,[54] but nowhere in the IRS Table or the Collection Financial Standards does this allowance appear. Rather, this allowance is found buried in a section of the Internal Revenue Manual that deals with offers in compromise.[55]

The Court does not believe that the flexibility provided in the IRS guidelines for application of its expense standards gives the Court discretion to vary the actual expense amounts contained in the IRS tables. In this respect, the amount of the operating expense "'shall

---

[51] *Id.* at § 5.8.5.1.

[52] *Id.* at § 5.8.5.20.3, ¶ 1.

[53] *Id.* at ¶ 5.

[54] Doc. No. 31 at 5.

[55] While the U.S. Trustee does not take issue with the $200 per month old-car deduction, courts dealing with this issue are divided. *Compare In re Baker,* No. 10-61317-13, 2011 WL 576851, at *3 (Bankr. D. Mont. Feb. 9, 2011) *with In re VanDyke*, No. BKR-10-82902, 2011 WL 1833186, at *6-7 (Bankr. C.D. Ill. May 12, 2011) and *In re Koch,* 408 B.R. 539, 545 (Bankr. S.D. Fla. 2009).

be the debtor's applicable monthly expense amounts specified under the . . . Local Standards . . . issued by the [IRS] for the area in which the debtor resides.'"[56] But as in *Ransom*, it is for this Court to decide what is "applicable,"—that is, "appropriate, relevant, suitable, or fit," to the Debtor's circumstances. Simply put, do the Local Standards, as interpreted by the Collection Financial Standards, provide flexibility to allow an operating expense deduction for the Debtor's third car under any factual circumstances? Based on the foregoing analysis of the methodology employed by the IRS in applying the Local Standards, the Court concludes that the IRS would, given appropriate facts, allow such an expense allowance.

      D.      "Means Test" Cases Dealing with Multiple Cars.

The U.S. Trustee has cited a number of bankruptcy court decisions for the proposition that a debtor is limited to taking operating expenses for at most two cars. A number of these cases were decided before the Supreme Court issued its opinion in *Ransom* on January 11, 2011.[57] In none of these cases did the debtor actually claim a deduction for three cars. Nor did the courts in these cases consider the precise issue before this Court—that is, whether such an allowance would be proper if three cars were, in fact, reasonably necessary for the maintenance and support of a household consisting of the Debtor and multiple dependents.

In any event, the Court does not find persuasive cases handed down before *Ransom* because those courts did not have the benefit of the Supreme Court's analysis and reasoning in

---

[56] *Ransom*, 131 S. Ct. at 724 (quoting 11 U.S.C. § 707(b)(2)(A)(ii)(I)) (alteration in original).

[57] *In re Predragovic,* No. 10-60259, 2010 WL 3239360, at *3-4 (Bankr. N.D. Ohio Aug. 16, 2010) (rejecting trustee's argument that the debtor should surrender his newer vehicle and be left with a seven-year-old car with over 100,000 miles on it, but nevertheless, dismissing the case based on bad faith); *In re Aprea,* 368 B.R. 558, 564 (Bankr. E.D. Tex. 2007) (disallowing debtors deduction for fiancée's car because it was "not an expense of the debtor or a legal dependent of the debtor"); *In re Johnson,* 346 B.R. 256, 266-67 (Bankr. S.D. Ga. 2006) (noting that while the debtors had a total of three vehicles, they had correctly taken the allowances for just two of them).

*Ransom* and *Lanning*, as discussed above. Accordingly, the Court's focus will be on decisions that have been entered after January 11, 2011, the date of the *Ransom* decision.

In this respect, the U.S. Trustee has cited four cases that postdate *Ransom*. Two of these cases, *In re Thiel*[58] and *In re Prestwood*,[59] stand for the same proposition: that is, that debtors may only claim the standard allowance contained in the IRS Table, rather than actual expenses. This Court certainly concurs with this conclusion. However, the issue here is not the amount of the operating expenses that the Debtor will be allowed for each car. Rather, the issue is the appropriate number of cars for which such an allowance should be made given the Debtors' particular circumstances.

The next case cited by the U.S. Trustee is *In re Hager*,[60] in which the court notes that the debtors were only entitled to ownership and operation expenses for two of their three vehicles. However, in *Hager*, the debtors had failed to complete Schedule B22C and failed to advance any justification for the necessity of three vehicles. Clearly, *Hager* is distinguishable from this case.

Finally, in *In re VanDyke*,[61] the court notes that married debtors are only entitled to claim an operating deduction for two vehicles. However, the court did not have before it the issue in this case because the debtors only owned two vehicles. The only issue before the court in *VanDyke* was "whether a Chapter 13 debtor is allowed an additional operating expense of $200 per vehicle when the vehicle is over six years old and/or the vehicle has over 75,000 miles."[62]

---

[58] 446 B.R. 434, 440 (Bankr. D. Idaho 2011).

[59] No. 4:11-cv-00154-MP-WCS, 2011 WL 1771051, at *2 (N.D. Fla. May 10, 2011).

[60] 447 B.R. 876, 878 (Bankr. D. Minn. 2011).

[61] No. BKR-10-82902, 2011 WL 1833186, at *7 (Bankr. C.D. Ill. May 12, 2011).

[62] *Id.* at *1.

None of these cases are particularly helpful in deciding the issue before this Court. Rather, this Court is left to the analysis followed in *Ransom*, which focuses on the text of the statute, the purpose of the statute, and the context.[63]

E. Resolution of the Issue in Light of the Text, Context, and Purpose of Section 707(b).

As discussed above, the means test supplants the pre-BAPCPA practice of calculating a debtor's reasonable expenses on a case-by-case basis, which led to varying and often inconsistent determinations.[64] The text of section 707(b) requires that set amounts—that is, Local Standards as set forth in the IRS Table—be used for various types of expenses, such as transportation expenses.[65]

However, while the IRS Table is sufficient for establishing the amount of an expense, as in *Ransom*, in this case it is not sufficient to establish for which cars the expenses should be allowed. "One cannot really 'just look up' dollar amounts in the tables without either referring to the IRS guidelines for using the tables or imposing pre-existing assumptions about how [they] are to be navigated."[66] In this respect, context is provided by the IRS guidelines.

It is clear from the IRS guidelines, as discussed above, that the means test is intended to approximate the debtor's reasonable expenditures on essential items. But as applied by the IRS, the means test requires a debtor to qualify for a deduction by actually incurring an expense in the relevant category. If the debtor will not have a particular kind of expense, the allowance is not

---

[63] *Ransom*, 131 S. Ct. at 721.

[64] *Id.* at 721-22 & n.2.

[65] 11 U.S.C. § 707(b)(2)(A)(ii)(I).

[66] *Ransom* 131 S. Ct. at 728 (citing *In re Kimbro*, 389 B.R. 518, 533 (6th Cir. BAP 2008) (Fulton, J., dissenting)) (alteration in original).

17

reasonably necessary within the meaning of the statute.[67] The converse is also true. Under the IRS guidelines, transportation expenses are considered necessary when incurred for cars used by taxpayers and their families to provide for their health and welfare.[68]

The approach taken in *Ransom* is not only consistent with the text of the means test as embodied in the statutory language and the context in which it is applied, it is also consistent with the purpose of the means test. Congress designed the means test to ensure that debtors repay creditors what they can afford to pay given their household income after allowing them set expense amounts as contained in the National and Local Standards.[69] This purpose is best implemented by interpreting the means test, consistent with the statutory text, to accurately reflect the debtor's particular circumstances.[70] In this way, the object of the means test—that is, that debtors who *can* pay creditors *do* pay them—can best be achieved.[71]

## Conclusion

This Court concludes that while the IRS Table is determinative as to the set amounts for allowable transportation expenses, the IRS guidelines must be resorted to in determining whether such an expense would be allowed by the IRS for the third car if it was reasonably necessary for the care and support of the debtor and his dependents. Because the IRS guidelines do provide such flexibility, the U.S. Trustee's motion for summary judgment will be denied. The Debtor will be provided the opportunity to present evidence at a final evidentiary hearing with respect to

---

[67] *Id.* at 725.

[68] IRM, Financial Analysis, at § 5.8.5.20.3.1, *available at* http://www.irs.gov/irm/part5/irm_05-008-005.html.

[69] *Ransom,* 131 S. Ct. at 725 (citing H.R. Rep. No. 109-31, pt. 1, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89).

[70] *Id.* (citing *Hamilton*, 130 S. Ct. at 2475-76).

[71] *Id.* at 721.

whether or not the third car is reasonably necessary for the care and support of the Debtor and the Debtor's dependents.

Accordingly, it is

**ORDERED:**

1. The U.S. Trustee's motion for summary judgment is DENIED.

2. By separate order the Court will schedule a further pre-trial conference in this contested matter.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, on  July 08, 2011          .

_____
Michael G. Williamson
United States Bankruptcy Judge

**Melanie Archer Newby, Esq.**
Attorney for Debtor

**Benjamin E. Lambers, Esq.**
Attorney for U.S. Trustee